**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

GROVER A. EVANS,                )
                                )
        Plaintiff,      )
                                )
                                ) Case No. CIV-20-080-RAW-KEW
                                )
COMMISSIONER OF THE SOCIAL      )
SECURITY ADMINISTRATION,        )
                                )
        Defendant.      )

**REPORT AND RECOMMENDATION**

Plaintiff Grover A. Evans (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 54 years old at the time of the ALJ's decision. He has a high school education and past relevant work as a detailer. He alleges an inability to work beginning on April 28, 2017, due to limitations resulting from depression, post-traumatic stress disorder ("PTSD"), neck problems, anxiety, and arthritis.

### Procedural History

On April 28, 2017, Claimant protectively filed his application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. His application was denied initially and upon reconsideration. On April 12, 2019, ALJ James Stewart conducted a hearing in Tulsa,

Oklahoma, at which Claimant testified. On May 16, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on January 14, 2020, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly consider, evaluate, and weigh the medical evidence; (2) failing to properly consider, evaluate, and weigh the opinions of both consultative examining doctors and order further cognitive testing; (3) failing to account for his moderate supervisory limits, which precluded employment; (4) improperly dismissing consistency/credibility by using Claimant's mental health symptoms against him; (5) ignoring his third-party witness statement; and (6) failing to adequately account for all of Claimant's impairments in the hypothetical questions to the vocational expert ("VE").

**Consideration of Medical Evidence**

In his decision, the ALJ found Claimant suffered from severe impairments of osteoarthritis and allied disorders, depression, bipolar disorder, personality disorder, trauma/stress disorder, and substance abuse disorder. (Tr. 14). He determined Claimant could perform light work with additional limitations. Claimant could not climb ladders, ropes, or scaffolds, but he could occasionally stoop, crouch, crawl, kneel, balance, and climb ramps/stairs. Stooping was limited to picking up objects at knee level or above. Claimant could not overhead reach bilaterally, but he could do frequent handling and fingering on the left side. Regarding mental impairments, Claimant was capable of doing "only unskilled work consisting of simple and routine tasks with routine supervision that require[d] only that he be able to understand, remember, and carry out simple instructions." He could "maintain concentration and persist for two-hour periods during the workday with normally scheduled work breaks between periods." Claimant could relate to supervisors and co-workers on a superficial and work-related basis and adapt to a work situation. However, Claimant "should not work at jobs where changes in work routine occur on a regular basis, or where changes in routine are regularly made under circumstances where there is usually little or no notice or opportunity to adjust." Claimant could have no contact with the general public. (Tr. 17).

After consultation with a VE, the ALJ determined Claimant could perform the representative jobs of small product assembler, inspector packer, and electrical accessory assembler, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 26-27). As a result, the ALJ concluded Claimant had not been under a disability from April 28, 2017, through the date of the decision. (Tr. 27).

Claimant argues the ALJ improperly rejected the entirety of his medical records from the Federal Bureau of Prisons. He contends the ALJ should have considered the records, as they provide longitudinal evidence of Claimant's disability. A review of the decision, however, reveals that although the ALJ noted the records were prior to Claimant's alleged onset date and were not pertinent to the period of disability in question, he considered the progress notes in reaching his decision. (Tr. 18, 352-459, 462-609, 610-21). The ALJ also referenced the records when discussing whether Claimant had a valid diagnosis of psychosis. (Tr. 25). Because the ALJ indicated he considered the records, there is no error. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) ("Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ 'at his word.'"), quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007).

Claimant also contends that the ALJ disregarded the opinion of Christina Parks, LPC, because there were no treatment records

6

provided. Claimant asserts that if the ALJ found the evidence from Ms. Parks incomplete, he had a duty to recontact her for the treatment records.

The ALJ discussed Ms. Parks mental status report letter in detail in the decision. (Tr. 20-21, 644-45, 759). Although the ALJ noted there were no treatment notes, he provided several other reasons for finding Ms. Parks' opinion was not persuasive. (Tr. 20-21). Moreover, the ALJ did not have a duty to obtain Ms. Parks' treatment notes as neither Claimant nor her counsel brought the records to the ALJ's attention, and Claimant's counsel affirmed that the record was complete and had no objection to the exhibits. (Tr. 38-42); *see Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("In short, we will not ordinarily reverse or remand for failure to develop the record when a claimant is represented by counsel who affirmatively submits to the ALJ that the record is complete. This is particularly the case when the missing medical records are not obvious from the administrative record or otherwise brought to the attention of the ALJ. Because the records' existence and significance were not brought to the attention of the ALJ and counsel affirmatively indicated the record was complete, the ALJ did not have a duty to obtain [the] records.").

**Consideration of Opinion/Prior Administrative Evidence**

Claimant raises several arguments regarding the ALJ's treatment of the opinion/prior administrative evidence. Because

7

Claimant filed his claims after March 27, 2017, the medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, he must "articulate" in his decision "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors

8

were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Claimant first challenges the ALJ's consideration of the opinion of consulting psychologist, Russell Pella, Ph.D. He asserts that Dr. Pella recommended additional testing and the ALJ violated his duty to develop the record by not ordering that additional testing. He also appears to take aim at the reasons given by the ALJ for finding Dr. Pella's opinion unpersuasive.

The ALJ thoroughly discussed Dr. Pella's mental examination of Claimant from September 2, 2017. He noted Dr. Pella's finding that "[t]he claimant's responses and reactions to questions, instructions, and directions during the interview, mental status, and testing portions of the exam appeared satisfactory, which was a favorable indicator for being able to adequately attend to, understand, carryout, and remember basic instructions in a work setting." The ALJ further mentioned Dr. Pella's statement that Claimant's below normal performance on the MoCA testing "likely signified mild cognitive problems related to an unspecified neurodevelopmental condition[,]" and that further testing "could

9

be warranted to obtain objective measurement of his cognitive status, including executive, processing speed, and memory functions in order to make more informed determinations concerning his ability to follow and remember instructions/directions." (Tr. 20, 639-42).

The ALJ was "not persuaded" by Dr. Pella's opinions:

> This case is governed by the new evidence rules, which give a more restrictive definition of medical opinions. Dr. Pella makes statements at 10F/4 that factors like depression "adversely influence the likelihood" the claimant would be able to work at an acceptable concentration, persistence, and pace, increasing the risk of problems with relating to supervisors, and coworkers is also not an opinion. The undersigned generally discounts these types of statements under the old rules as ambiguous and entitled to little weight. My understanding of the new rules is that they are simply not medical opinions. DDS reviewed Dr. Pella's consultative examination and did not treat it as opinion evidence[,] Exhibit 4A/11. As such, the undersigned is not persuaded by Dr. Pella's statements. Dr. Pella suggested further cognitive testing could be warranted. The undersigned does not agree that is necessary. The fact that his cognitive impairment was rated as mild and he obtained his GED and a driver's license do not support a severe cognitive impairment. The claimant spent most of his adult life in prison but when released he made SGA for the year 2016.

(Tr. 20). This Court finds no error in the ALJ's evaluation of Dr. Pella's opinion. The ALJ discussed specific reasons why he found Dr. Pella's opinion was not persuasive.

There is also no error by the ALJ for declining to order further cognitive testing of Claimant. Although the ALJ "'bears responsibility for ensuring that an adequate record is developed

during the disability hearing consistent with the issues raised[,]'" *Maes*, 522 F.3d at 1096, quoting *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004), he has broad latitude when deciding whether to order a consultative examination. *Hawkins*, 113 F.3d at 1166, citing *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). "Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial[.] . . . When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167 (citations omitted). When a claimant is represented by counsel, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.  Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Id*.

As previously discussed herein, Claimant's counsel agreed the record was complete and did not object to the exhibits. (Tr. 38-42). There was no request by Claimant or counsel for additional cognitive testing. Thus, the Claimant has not demonstrated any error by the ALJ for failing to order another mental consultative examination.

11

Claimant next challenges the ALJ's consideration of the opinion of consultative examiner, Leomar Bautisa, D.O. He asserts that the ALJ accepted the physical examination of Dr. Bautisa, but he failed to explain what portions of the examination he accepted and why. The ALJ discussed Dr. Bautisa's findings in detail in his review of the medical evidence. (Tr. 18-19, 630-35). Dr. Bautisa made clinical findings based upon his examination of Claimant, but he did not reach any conclusions regarding functional limitations. *See generally*, *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."). There is no error with the ALJ's consideration of Dr. Bautisa's physical examination of Claimant.

Claimant also asserts the ALJ improperly relied upon certain prior administrative findings from the state agency examining psychologists, Joan Holloway, Ph.D., and Laura Lochner, Ph.D., when determining that their mental assessments were persuasive. Claimant's mental RFC was consistent with their findings. (Tr. 17, 25, 101-03, 120-22).

He first argues the ALJ improperly relied upon the examining psychologists' inaccurate conclusion that Claimant did not take antipsychotic medications when finding Claimant did not have significant symptoms of psychosis. (Tr. 98, 116). He maintains that records from Green Country Behavioral Health show he was

taking anti-psychotic medications, specifically Seroquel and Zyprexa. The records do show that Claimant was taking the medications, but they indicate Claimant was taking them to assist with sleep, not because he exhibited psychotic symptoms. (Tr. 691, 694, 695, 700).

Claimant next argues that the ALJ failed to include in the RFC the examining psychologists' findings that he was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors. The examining psychologists reached this conclusion in Section I of the MRFCA and then further addressed the limitation in the narrative portion of the MRFCA. They determined Claimant could interact superficially with supervisors. (Tr. 102, 122). Because the examining psychologists adequately explained the moderate limitation found in Section I in the narrative portion of the assessment, the ALJ was not required to include or discuss the limitation found in Section I of the MRFCA. *See Lee v. Colvin*, 631 Fed. Appx. 538, 541 (10th Cir. 2015) ("Having adopted the limitations described in section III of the MRFCA, the ALJ was not also required to specifically adopt or discuss each individual limitation described in section I. . . . [T]he ALJ's RFC assessment reflected the moderate limitations identified by Dr. Lindsay in Section I of the MRFCA, as explained in the narrative portion of his assessment, Section III.").

In conclusion to his arguments regarding the medical opinions, Claimant argues there is no medical opinion upon which the ALJ's RFC assessment is based. He asserts that the ALJ relied upon his own "medical expertise" when formulating the RFC. There is no merit to Claimant's argument. It is "the ALJ . . . [who] is charged with determining a claimant's RFC from the medical record." *Howard*, 379 F.3d at 949. There is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

### Evaluation of Symptoms

Claimant takes issue with the ALJ's evaluation of his reported symptoms, arguing that certain factors relied upon by the ALJ were unsupported and that the ALJ's overall evaluation was not "closely and affirmatively" linked to substantial evidence.

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly

articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of his evaluation of Claimant's subjective symptoms, the ALJ noted the two-step process set forth in Social Security Ruling 16-3p and the requirements under 20 C.F.R. § 404.1529. (Tr. 17). The ALJ determined Claimant's medically determinable impairments could reasonably cause his alleged symptoms, but he found that Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 23).

In making these determinations, the ALJ summarized Claimant's testimony at the hearing. (Tr. 18). He discussed several factors, including inconsistencies with the objective medical evidence regarding Claimant's physical and mental symptoms (Tr. 23-24), Claimant's poor work history (Tr. 23), his intermittent noncompliance with medications but the effectiveness of medication when he took it (Tr. 18, 21, 24), Claimant's activities (Tr. 23), his failure to seek treatment for physical conditions (Tr. 23),

15

and inconsistencies in Claimant's statements about his symptoms (Tr. 23, 24).

The ALJ's evaluation of Claimant's subjective complaints was linked to the evidence and included specific reasons for the weight given to Claimant's symptoms. This Court finds no error in the ALJ's evaluation of Claimant's symptoms.

### Evaluation of Third-Party Function Report

Claimant contends the ALJ improperly ignored the third-party function report completed by his brother. "Third-party function reports completed by family members are considered 'evidence from nonmedical sources.'" *Keener v. Saul*, 2021 WL 2460614, at *3 (W.D. Okla., June 16, 2021), quoting 20 C.F.R. § 416.913(a)(4). Under the new regulations, "[a]n ALJ is 'not required to articulate how [he]considered evidence from nonmedical sources.'" *Id*., quoting 20 C.F.R. § 416.920c(d).  An ALJ is not, however, absolved from considering non-medical source evidence when formulating the RFC. Such statements from family are still to be considered by the ALJ. *Id*., n.4 ("[C]urrent regulations continue to require the ALJ to consider 'all the relevant medical and other evidence in your case record' when formulating the RFC."), quoting 20 C.F.R. §§ 416.920(e), 416.945(a)(3).

Here, the ALJ did not specifically discuss the function report completed by Claimant's brother. The ALJ did state in the decision that he "considered all evidence in the record even if not

specifically cited in this decision." (Tr. 17). There is no error, as this Court will take the ALJ at his word that he considered all the evidence in the record, including the report from Claimant's brother. *See Wall*, 561 F.3d at 1070 ("Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ 'at his word.'"), quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). This was all he was required to do, as the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 416.920c(d).

### Step Five Determination

Claimant argues that because the RFC did not include all of his limitations, the hypothetical question posed to the VE was deficient. "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

The Court finds no error in the ALJ's questioning of the VE. The hypothetical questions to the VE included those limitations

found to exist by the ALJ and included in the RFC. *See Qualls*, 206 F.3d at 1373 (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of September, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE